THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY GUTIERREZ, Defendant-Appellant.

Third District   No. 3—86—0756

Opinion filed June 22, 1987.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial, the defendant, Jerry Gutierrez, was convicted of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(2), 12—14(b)(2)), and sentenced to two concurrent 10-year terms of imprisonment.

The evidence at trial established the following. Twelve-year-old Laura Oviedo had been hospitalized for behavioral problems, drug use and lying. On July 13, 1985, she had permission to go home. At 10:30 a.m. that day, she accompanied her cousins to their house. They watched television for 15 minutes, returned to Laura's for permission to attend a baseball game and then went back to her cousins' home. At approximately 11:30 a.m., Laura rode a bicycle to the Martinez grocery. As Laura approached the grocery, she saw her acquaintance, the 15-year-old defendant, across the street. He informed her that her brother awaited her in the alley. They walked across a vacant lot to the alley where the defendant approached her and pushed her down. Her head struck a rock as she fell to the ground on her back. The taller, heavier defendant pinned her arms and punched her stomach when she struggled. Laura saw the defendant pull down his shorts and felt him pull her shorts aside and insert his penis into her vagina. She felt pain, as she had never previously had intercourse.

Despite her shock and fear, Laura poked the defendant in his eye and escaped to her bicycle. Laura rode a short distance, but when she saw the defendant following her, she became afraid and stopped near a tavern. After she tripped over a brick, the defendant found her and threatened her life with a broken beer bottle. Laura kicked him and again ran to her bicycle. She rode several blocks but then fell off her bicycle. Her mother Margarita, who had been searching for Laura, arrived momentarily and took Laura to her aunt's to await an ambulance.

Dr. Janice Smith treated Laura in the Silver Cross Hospital emergency room. Dr. Smith found that Laura's cervix was bloody and the posterior portion of her hymen was stretched, bruised, swollen and bleeding. Laura also had a pubic hair in the deepest ridges of her bloody vaginal vault. Her left breast was freshly bruised. Her right thigh was scratched. Her underwear and aqua shorts were heavily

bloodstained. The back of her white top was soiled. A head hair consistent with the defendant's was found on Laura's clothes. Dr. Smith opined that something had forcibly penetrated Laura's vagina within the past six hours. No seminal fluid was detected on Laura's vaginal swab but a trace amount was discovered on her rectal swab.

Because she feared the defendant, Laura lied to a nurse and three police officers about what had happened and accused another of committing the offense. She, however, subsequently identified the defendant as the offender from photographs.

The defendant admitted to Detective Terry Mazur that he knew Laura's age when he forcibly, sexually assaulted her but accused her of bruising his neck with a "hickey." The defendant later contradicted that statement and at trial testified that Laura had visited him at his home on the morning of the offense, lured him into his basement, and given him a "hickey." The defendant denied having intercourse with Laura and explained that he had been coerced to untruthfully confess.

Various witnesses verified that a young girl on a bicycle visited the defendant on the morning of the offense. Domingo Contreras and the defendant's mother, Carmen Hernandez, stated that that girl was not wearing the shorts taken from Laura in the hospital. Both Carmen and the defendant's sister, however, thought the girl could have been Laura. Carmen and the defendant's sister-in-law both noticed later that day that the defendant had a "hickey."

 Initially, we address the defendant's argument that one of his two convictions based on the same physical act should be vacated. The State agrees and elects to retain the conviction based on bodily harm.

In count I, the defendant was charged with aggravated criminal sexual assault for knowingly causing Laura bodily harm on July 13, 1985, in violation of section 12—14(a)(2) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2)). Count II charged the same offense in violation of section 12—14(b)(2) of the Code because the defendant was under 17 years of age and Laura's age was between 9 and 13. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(2).

A defendant is prejudiced if more than one offense is carved from the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) The record establishes that only one act of sexual penetration occurred. We find that only one conviction may stand and, therefore, vacate the defendant's count II conviction and affirm the defendant's count I conviction for aggravated criminal sexual assault based on bodily harm. See *People v. Holman* (1984), 103 Ill. 2d 133, 469 N.E.2d 119.

■ The defendant next argues that his credibility was affected and he was prejudiced by the erroneous introduction of evidence of his drug use and the court's harmful admonishment. Even though the defendant voiced no objection to the court's admonition until he filed and subsequently argued his post-trial motion, we choose to address both aspects of the issue. *People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E.2d 710.

Over the defendant's objection, the court allowed Margarita to testify that she disliked the defendant because he was high, reeked of paint, spoke slowly, and had red eyes on at least three occasions prior to that July 11. The defendant moved for mistrial the morning after Margarita testified. In denying the motion, the court found that the defendant had impeached Margarita and confessed prejudicial error in allowing her testimony about the defendant's drug use or addiction. It admonished the jury that Margarita had erroneously been allowed to so testify and ordered the jury both to disregard that irrelevant information and not to allow it to prejudice the defendant.

This court disregards the erroneous admission of other criminal evidence unless it could have influenced the jury. In the latter case, the record must affirmatively establish that the other overwhelming evidence of the offense charged obliterated any prejudice. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Consequently, even as to an alleged violation of constitutional rights, if the jury's verdict could not reasonably have resulted from the error, then it was harmless beyond a reasonable doubt and the judge's admonishment to disregard that evidence sufficiently dispelled any error. *People v. McCumber* (1985), 132 Ill. App. 3d 339, 477 N.E.2d 525; *People v. Beardsley* (1985), 139 Ill. App. 3d 819, 487 N.E.2d 731.

■ We find that the court erroneously allowed Margarita to testify about the defendant's drug use. However, given the overwhelming evidence that the defendant sexually assaulted Laura, we find that the court's admonishment cured and obliterated any possible prejudicial effect upon the defendant. Hence, no reversible error occurred.

■ The defendant next argues for the first time on appeal that he should be resentenced because the court erroneously believed that he had to be sentenced as an adult.

Under section 2–7 of the Juvenile Court Act (the Act) (Ill. Rev. Stat. 1985, ch. 37, par. 702–7), minors who are at least 15 years of age and who are charged with aggravated criminal sexual assault are to be prosecuted pursuant to the Code. (Ill. Rev. Stat. 1985, ch. 37, par. 702–7.) The defendant suggests that the court was unaware of

the available sentencing alternatives because effective December 2, 1985, Public Act 84—1075 amended section 2—7 of the Act and provided for sentencing under the Act or the Code.

·At sentencing, the defendant acknowledged that probation was not a sentencing alternative for his convictions. He noted his age and requested that the court impose the minimum sentence under the Code, six years of incarceration. The court imposed a 10-year term but indicated that the defendant would be entrusted to the juvenile division of the Department of Corrections.

We find that section 2—7, both prior to and following Public Act 84—1075, made dispositions available pursuant to both the Code and the Act. In fact, it afforded a criminal court judge discretion to adjudicate a minor delinquent pursuant to the Act, to impose juvenile punishment for a juvenile conviction or to sentence a juvenile defendant pursuant to the Code. *In re J.B.* (1985), 138 Ill. App. 3d 958, 487 N.E.2d 52.

The record does not indicate that the court was mistaken about the defendant's minimum sentence. In fact, before the court imposed sentence, it carefully considered the pertinent aggravating and mitigating factors set forth in the Code. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) Instead of supporting an abuse of discretion, the record indicates that the defendant agreed that probation was unavailable and invited the court to sentence him as an adult. We, therefore, cannot allow the defendant to successfully complain of the alleged error on appeal. *People v. Beavers* (1986), 141 Ill. App. 3d 790, 491 N.E.2d 438.

■ Finally, the defendant argues that the court erroneously ordered him to reimburse his public defender attorney from his bond.

The court noted that the defendant, who had a court-appointed attorney, had posted $1,500 bond. The State orally requested public defender reimbursement at the hourly rate of $52.85. The defendant's counsel stated that she had worked more than 80 hours on the defendant's case. The court ordered that the defendant's bond be applied to court costs of $528 and public defender fees of $972.

When a defendant has court-appointed counsel, the court may, following a hearing, order reasonable reimbursement from the defendant's bond and may consider the interests of whoever posted the bond. (Ill. Rev. Stat. 1985, ch. 38, par. 113—3.1.) The court must, however, determine the county's cost and the defendant's foreseeable ability to pay. *People v. Bramlett* (1983), 118 Ill. App. 3d 1056, 455 N.E.2d 1092.

■ The defendant was present when the State orally moved for

560

reimbursement. The court knew that subsequent to his trial the indigent, 16-year-old defendant had worked at most two days weekly with his father. It found that the defendant was unable to compensate the victim. The record was devoid of the defendant's ability to pay, the county's actual cost for the defendant's counsel and considerations of the person who posted his bond. We find that under these circumstances the court abused the statutory procedure. (See *People v. Reynolds* (1987), 152 Ill. App. 3d 216, 504 N.E.2d 163.) Therefore, pursuant to Supreme Court Rule 615(b), we vacate the trial court's reimbursement order. 87 Ill. 2d R. 615(b).

Accordingly, the judgment of the circuit court of Will County is modified to vacate both the defendant's count II conviction and the provision ordering the defendant to reimburse the county $972 for attorney fees. The judgment is otherwise affirmed.

Affirmed as modified.

BARRY, P.J., and HEIPLE, J., concur.