THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES GREENE, Defendant-Appellant.

First District (1st Division) No. 85—1971

Opinion filed September 14, 1987.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula M. Carstensen, and Joanne M. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant, James Greene, was charged by indictment with the murder of Rickey Baldwin. Following a bench trial in the circuit court of Cook County, the defendant was found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), and sentenced to 27 years' imprisonment. Defendant contends in his appeal that: (1) the trial court erred by restricting cross-examination of one of the State's witnesses; (2) he was not proved guilty of murder beyond a reasonable doubt; (3) the evidence justified at the most a conviction for voluntary manslaughter; and (4) the sentence of 27 years' imprisonment was excessive.

Hugh Adams testified that during the early morning hours on July 29, 1983, he was standing outside of the Ida B. Wells housing project at 39th and Langley Avenue when he saw the victim, Rickey Baldwin (Rickey Dog), and Marcus Thompson (Morocco) leave the

building located at 706 East 39th Street. Baldwin (hereinafter referred to as the victim) was carrying a 10-speed bicycle. He called out to Adams and Adams walked towards him and Thompson. At this time Adams noticed the defendant standing near the side of the 706 East 39th Street building. He saw the defendant reach into his pants, pull out a gun and fire one shot at the group.

Adams yelled "break" and they all ran in different directions. After Adams ran across the street, he turned and saw defendant chase the victim. When the victim tripped over a chain and tried to flee, defendant shot him in the back. The defendant then put the gun in the front of his pants, ran towards Adams and proceeded to the housing project.

Marcus Thompson testified that on July 29, 1983, during the early morning hours he was on the eighth floor of the 706 East 39th Street building when the victim left his girlfriend's apartment. Thompson told the victim that he had seen the defendant earlier in the building. The victim pulled a 30-inch chain from his 10-speed bicycle and the two of them walked down the back stairs and left the building together. The victim was a member of the Black P. Stone Rangers gang and defendant was a member of the Gangster Goon Squad, a rival gang.

After they exited the building, the victim called Hugh Adams, who began walking towards them, and it was at this time that the defendant shot at the group. The victim, Adams and Thompson ran in different directions. The defendant chased only the victim. Thompson testified that he heard a second shot fired but he did not actually see the defendant shoot the victim, nor did he see a chain beside the victim after he had been shot.

Thompson heard no verbal exchange between defendant and victim before the former fired the weapon, nor did he observe the victim physically threaten defendant with a chain.

The defendant, James Greene, testified that he did not intentionally try to kill the victim. However, when the victim, Adams and Thompson began walking towards him, he was "scared" and "panicked" because of a prior encounter with the victim. Specifically, on September 17, 1982, the victim and some of his friends followed defendant after he left a store at 38th and Cottage Grove. Defendant was shot by someone in the victim's group. The defendant was hospitalized for six months as a result of the gunshot wound. Also, the bullet was never removed because it was too close to his heart. The defendant added that a relative of the victim came to the hospital and told defendant that he "better not say nothing." Although the defend-

ant did not at that time tell the police who had shot him, he had told his brother that "Rickey Dog" shot him.

The defendant further testified that on July 29, 1983, at midnight, he visited his girlfriend on the eighth floor of the 706 East 39th Street building. When he arrived on the eighth floor, the victim and Thompson were there, but defendant did not speak to them. When defendant left his girlfriend's apartment at 1:30 a.m., the victim and Thompson faced the front of the building. Defendant added that he went down the back stairs to avoid them but walked "through the building" and exited from the front entrance.

Defendant proceeded to the corner, turned and heard either the victim or Thompson "drop a bicycle." He observed the victim, who had a "chain wrapped double around his hand," and Thompson approach him. Thompson then called Hugh Adams, who was across the street. Thompson, Adams and the victim then walked toward the defendant, who pulled out a gun and fired a shot. When the three men fled, defendant pursued the victim, whom defendant shot from a distance of 10 to 15 feet while the victim was running away.

Detective Henry Sigler was assigned to investigate the death of Rickey Baldwin. Defendant was arrested on January 3, 1984, and signed a written confession on January 4, 1984, which stated that after the victim tripped over a small chain fence the defendant shot him in the back. The statement was stipulated to at trial. Additionally, there was a stipulation regarding a report submitted by the Cook County medical examiner's office, which performed a postmortem examination on the victim. Dr. Eupil Choi would testify "that Rickey Baldwin died of a bullet wound of the back with penetrations in the aorta and the lung, with internal bleeding."

At the close of all the evidence, the court found the defendant guilty of murder and sentenced him to 27 years' imprisonment. Subsequently, defense counsel filed a written motion for a new trial and a motion to reduce the sentence. Both motions were denied by the trial court and the defendant filed this appeal.

The defendant contends that the trial court erred by barring the defense from cross-examining one of the State's occurrence witnesses concerning that witness' recent arrest for possession of a controlled substance and the factual matrix surrounding the victim's and witness' plea of guilty to a charge of felony theft in May of 1983.

The State argues that the defendant waived this issue by not alleging it as error in his written motion for a new trial. The Code of Criminal Procedure of 1963 requires that a written motion for new trial be filed by a defendant within 30 days following the entry of

judgment specifying the grounds therefore. (Ill. Rev. Stat. 1985, ch. 38, par. 116—1.) In the instant case, the post-trial motion filed herein does not specify the above ground upon which the defendant seeks reversal by this court.

 It is well settled that the general rule in Illinois is that the failure of the defendant to raise an issue in a written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 233; *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) This waiver rule applies to constitutional as well as to other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) Failure to raise specific issues in the trial court denies that court the opportunity to grant a new trial if warranted. *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 233.

Supreme Court Rule 615(a), however, provides an exception to the general rule of waiver where there has been "plain error." The rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).) It must be plainly apparent from the record that an error affecting substantial rights was committed. *People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227.

Plain error may be invoked in criminal cases where the evidence was closely balanced or the error was of such magnitude that the accused was denied a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091; *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

█ In the case at bar, we do not find it necessary to consider the merits of defendant's contention that error was committed by the trial court in restricting cross-examination. By failing to raise the alleged error in the trial court, the defendant has forfeited his right to raise it on review. Our task is to examine the record for the sole purpose of determining whether the complained-of error falls within the exception to the waiver rule. If we decide that plain error should be recognized it is only then that we look to the merits of defendant's contention. In fulfilling this task, a reviewing court must look to two aspects of plain error. We first must scrutinize the trial record to determine if the evidence was so close that any alleged errors may have been the difference between a judgment of acquittal and conviction. We must also look at the record to resolve the question of whether the defendant was deprived of a fair and impartial trial.

In the instant case, with respect to the closeness of the case, it is undisputed, and in fact the defendant admitted at trial, that he chased

the victim, that at the time of the chase he was not being threatened in any manner by anyone, and that as the victim fled and fell, defendant shot him in the back. Hence, the evidence was not closely balanced and was, in fact, overwhelming against the defendant.

We then must search the record to settle the question of whether the alleged error deprived the defendant of a fair trial. We have done so and we find no error of such caliber as to require the recognition of plain error.

In light of the overwhelming evidence of guilt and in the absence of any evidence in this record that defendant was deprived of a fair and impartial trial, we decline to invoke the plain error doctrine under the facts of this case.

■ The defendant further contends that the weight of the evidence showed that he acted in self-defense when he shot the victim and that his conviction for murder should be reversed. Alternatively, the defendant argues that his murder conviction should be reduced to voluntary manslaughter since he had a reasonable belief that he was acting in self-defense. Whether a homicide is murder or manslaughter, or whether it is justified as self-defense, is a question to be determined by the trier of fact. *People v. Washington* (1984), 121 Ill. App. 3d 479, 485, 459 N.E.2d 1029, 1035.

The defendant relies upon the following factors to support his contention that he acted in self-defense. The victim was: (1) a convicted felon; (2) a member of a rival gang; (3) armed with a chain; (4) older than the defendant; (5) accompanied by two companions, while the defendant was alone; and (6) the victim had accompanied other individuals, one of whom had shot the defendant the previous year.

The general rule regarding justifiable use of force provides:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forceable felony." Ill. Rev. Stat. 1985, ch. 38, par. 7—1.

The use of force in defense of the person is justified where (1) that force is threatened against the person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the force threatened is unlawful; and (5) the person threatened must actually believe that a danger exists, that the use of force is necessary and

that such beliefs are reasonable. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 221, 498 N.E.2d 547; *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1021, 415 N.E.2d 499, 501; *People v. Williams* (1965), 56 Ill. App. 3d 159, 165, 205 N.E.2d 749.

■ ■ The issue of self-defense is an affirmative defense based upon satisfaction of the above elements (Ill. Rev. Stat. 1985, ch. 38, par. 7—14.) This defense is raised only if the defendant presents some evidence regarding each element. (Ill. Rev. Stat. 1985, ch. 38, par. 3— 2; see also *People v. Williams* (1965), 56 Ill. App. 2d 159, 166, 205 N.E.2d 749.) Once the issue is raised, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. Ill. Rev. Stat. 1979, ch. 38, par. 3—2; *People v. Balfour* (1986), 148 Ill. App. 3d 215, 221, 498 N.E.2d 547; *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1022, 415 N.E.2d 499.

■ ■ The issue of self-defense is determined by the trier of fact. If the trier of fact has determined that the State has negated beyond a reasonable doubt any one of the elements justifying the use of force, then the State has carried its burden of proof. (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 674, 450 N.E.2d 1290, 1294; *People v. Ross* (1981), 100 Ill. App. 3d 1033, 1038, 427 N.E.2d 955, 959.) The trier of fact's decision on the issue of self-defense will not be disturbed on review unless the decision is so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 222, 498 N.E.2d 547.

■ The State argues that in the instant case there was no evidence to support self-defense. We agree. The defendant became the aggressor when he fired a warning shot at the three individuals approaching him who withdrew when defendant fired the weapon. Defendant then proceeded to chase only the victim and shot him in the back. Therefore, he cannot claim that he was in imminent fear of death or great bodily harm. If the defendant is the aggressor, the use of deadly force is justified only if:

> "(1) Such force is so great that he reasonably believes that he is in imminent danger *** of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or
>
> (2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate[d] the use of force ***." Ill. Rev. Stat. 1985, ch. 38, pars. 7—4(c)(1), (c)(2).

The defendant as the aggressor never attempted to escape the

danger, if such danger existed. Moreover, he never withdrew or terminated the use of force. In fact, he accelerated his use of force by pursuing the victim and firing a second shot, although the victim had retreated.

A reading of the record fails to reveal any evidence which tends to show that force was threatened against the defendant. Although it is undisputed that the victim was carrying a 30-inch chain, there is no evidence that the victim used the chain to threaten the defendant. Moreover, by the defendant's own testimony he admitted to shooting the victim in the back from a distance of 10 feet.

■■■ Even if the victim had been the initial aggressor, the right of self-defense does not permit the pursuit and killing in retaliation or revenge of an initial aggressor after he retreats. Ill. Rev. Stat. 1985, ch. 38, par. 7—4(c)(2); *People v. Tirrell* (1980), 87 Ill. App. 3d 511, 517, 408 N.E.2d 1202; *People v. Thornton* (1962), 26 Ill. 2d 218, 186 N.E.2d 239.

Clearly, the evidence supports the trial court's decision to reject defendant's claim of self-defense. After a review of the record, we must conclude that the trial court's decision was not so improbable or unsatisfactory as to suggest reasonable doubt of the defendant's guilt.

■■■ Alternatively, the defendant contends that the evidence supports a finding of voluntary manslaughter. A person commits voluntary manslaughter if he kills an individual without lawful justification under a sudden and intense passion resulting from serious provocation, or if he intentionally or knowingly kills an individual believing the circumstances would justify or exonerate the killing, but his belief is unreasonable. Ill. Rev. Stat. 1985, ch. 38, par. 9—2; *People v. Fausz* (1983), 95 Ill. 2d 535, 539, 449 N.E.2d 80.

The record in the instant case revealed that the defendant did not act under a "sudden and intense passion resulting from serious provocation." Defendant testified that no verbal exchange occurred between the defendant and victim, nor did the victim physically threaten him with the chain. The defendant deliberately chased and shot the victim after the latter fell.

■■■ In regard to the defendant's unreasonable belief that the circumstances would justify the killing, defendant points out that he was "scared" and "panicked" when Thompson, Adams and the victim began to walk towards him. However, we fail to see how the defendant could have been in fear of harm from these individuals when they ran after the first shot was fired. We believe that the evidence supports a finding that the defendant had no subjective belief that the force he used was necessary, which is consistent with the finding of murder,

not voluntary manslaughter.

 A person commits murder if he either intends to kill or do great bodily harm to that individual or another or if he knows that such acts create a strong probability of death or great bodily harm. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2).) It is not necessary to prove that the defendant had the intent to commit murder, only that he voluntarily and willfully committed an act, the natural consequences of which were to cause death or great bodily harm. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 148, 475 N.E.2d 606.) Although the defendant asserts that he did not intentionally kill the victim, he knew or should have known that the natural and probable consequences of shooting the victim in the back would cause death or do great bodily harm.

The reviewing court's power to reduce a murder conviction to manslaughter pursuant to Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)) should be cautiously exercised. (*People v. Sunquist* (1977), 55 Ill. App. 3d 263, 370 N.E.2d 864.) Based on the facts of this case we will not substitute our judgment for that of the trier of fact. We find no reason to disturb the trial court's finding upon review.

 Finally, the defendant contends that the trial court should have imposed the minimum sentence for murder in light of the defendant's limited criminal record and other mitigating circumstances. Alternatively, the defendant argues that the cause should be remanded to the trial court for resentencing, asserting that: (1) he was not given reasonable time to prepare for the sentencing hearing; (2) an outdated presentence investigative report was used; and (3) the defense counsel did not mention the defendant's suicidal tendencies in his motion to reduce the sentence.

The State contends that the trial court properly sentenced the defendant to serve 27 years' incarceration for murder after considering evidence in mitigation and aggravation and the defendant's presentence report. It is the duty of the parties to bring to the attention of the sentencing court any alleged deficiency or inaccuracy in the presentence report. Any objections to the sufficiency of the report must first be presented to the trial court. (*People v. Meeks* (1980), 81 Ill. 2d 524, 533, 41 N.E.2d 9.) In the instant case, the defense counsel supplied the court with the outdated presentence report. Factors considered by the trial court in mitigation and aggravation included the defendant's age, prior criminal record, health, membership in a gang, potential for rehabilitation, and the nature of the offense.

 The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and

with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, sec. 11.) In a sentence determination, restoring the offender to useful citizenship is to be accorded no greater consideration than that which establishes the seriousness of the offense, and the prime responsibility for striking the proper balance between these two factors rests with the trial court. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109, 458 N.E.2d 1370.) In imposing the sentence, the trial court wanted to send a message to the community that this type of "senseless" killing would not be tolerated, while simultaneously acknowledging the need for the defendant to be rehabilitated.

■ A sentence of not less than 20 years and not more than 40 years may be imposed for murder; however, under certain circumstances the court may sentence the defendant to a term of natural life imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(1)(a).) Although, pursuant to Supreme Court Rule 615(b)(4), we have the discretionary power to reduce an excessive sentence (87 Ill. 2d R. 615), the trial judge is in a superior position to consider and determine the punishment to be imposed rather than a reviewing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Moreover, it is well settled that "[t]he trial judge's decisions in regards to sentencing are entitled to great deference and weight, and absent an abuse of discretion by the trial court, a sentence may not be altered upon review." *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522, 477 N.E.2d 1299, 1306; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■ The trial judge in the case at bar carefully considered the evidence presented in aggravation and mitigation. Considering the severity of the crime, we find no reason to disturb the sentence imposed by the trial judge. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.