THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RON T. BERRYMAN, Defendant-Appellant.

Fifth District   No. 5—86—0776

Opinion filed June 24, 1988.—Rehearing denied July 27, 1988.

Robert Agostinelli and Mark D. Fisher, both of State Appellate Defender's Office, of Ottawa, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant, Ron Berryman, was indicted for murder under section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)). The specific charge against him was that on May 25, 1986, defendant, "without lawful justification and with intent to kill" stabbed Richard Baker with a long, pointed, metal object, thereby causing Baker's death. Although defendant was only 15 years old at the time this offense was committed, he was prosecuted as an adult in accordance with section 2—7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a)). Following a two-day jury trial in the circuit court of St. Clair County, defendant was convicted of the murder charge and sentenced to a term of imprisonment of 25 years. Defendant's post-trial motion was denied. He now appeals.

Several issues are presented for our review. First, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence did not establish that he possessed the

requisite mental state. Second, he asserts that his conviction cannot stand because of certain errors committed by the trial court in instructing the jury. In the alternative, defendant argues that even if his conviction is upheld, the cause must nevertheless be remanded for resentencing because the trial judge erroneously believed that defendant had to be sentenced as an adult and failed to realize that a disposition could be made under the Juvenile Court Act. For the reasons which follow, we affirm.

The events which culminated in the stabbing death of Richard Baker commenced on May 24, 1986. On that day, students from the King Junior High School in Centreville, Illinois, took a field trip to the Six Flags amusement park in St. Louis County, Missouri. Hundreds of children, their friends, and family members participated. A convoy of 23 buses, plus some private vehicles, provided the transportation.

Among the students who went on the field trip were defendant and his victim, Richard Baker. While the group was at Six Flags, arguing took place between members of the Disciples and members of the Vice Lords, two rival youth gangs from the King school. Defendant belonged to the Vice Lords. Baker was associated with the Disciples.

The group returned to the grounds of the King school shortly after 11:30 p.m. on the night of May 24. As riders disembarked from the buses, a large crowd formed. According to Centreville police officers, who had been sent to the area to provide traffic control, as many as 1,500 children, parents, and bystanders were present. Testimony was adduced suggesting that among them were some older boys, apparently gang members, who had not gone on the field trip, but who were simply waiting for their compatriots to arrive home.

Exactly what transpired next is disputed. One of the few points upon which there is agreement is that a gang fight soon broke out near a corner of the school between the Disciples and the Vice Lords. Estimates vary as to how many people became involved in the melee. One eyewitness placed the number at between 20 and 30. A second witness said 30. A third said 40. A fourth supposed the number to be about 50. Defendant himself thought that approximately 100 people participated.

According to Lamont Reed, a 14-year-old student at King and member of the Disciples, a Vice Lord "slammed" Richard Baker during the fight, that is, the Vice Lord picked Baker up and threw him down on the ground. As Baker started to get up, defendant stabbed him with a shiny chrome rod. Baker was unarmed. In fact, Reed testi-

fied that he saw no one other than defendant carrying a weapon. The combatants used only fists.

Reed was an eyewitness for the prosecution. Another prosecution witness was Marvin Conley, who was also a 14-year-old student at King. Conley testified that he and Baker were friends and had ridden the same bus back from Six Flags. According to Conley, Baker observed the gang fight after it had begun. Baker ran toward the school building, and Conley followed behind him. Conley stated that Baker simply intended to go around the school so that he could make his way home, but he also indicated that Baker ran toward the area where the fight was taking place. At that point a group of Vice Lords jumped in between Conley and Baker. Someone struck Baker, and as he fought to get out of the crowd, he was stabbed by the defendant with an instrument which resembled a screwdriver. Like Reed, Conley reported that the people involved in the fight were using only their fists. He did not see anyone use knives or bottles or sticks or other weapons.

Timothy Davis, a third prosecution witness, gave a somewhat different version of what took place. According to Davis, he first saw Baker standing up against a pole holding a teddy bear. He then observed Baker dropping the teddy bear and running away from the pole to join the fight. As Baker entered the fray, he began struggling with defendant. According to a signed statement which Davis had previously given to the police, defendant grabbed Baker, "struggled Baker halfway down, punching Baker." Defendant then pulled out a silver or chrome piece of metal "and was punching him with it, and it looked like the last blow [defendant] stabbed him."

Another prosecution witness was Philip Johnson, a 17-year-old member of the Vice Lords. Although Johnson did not attend King Junior High School, he had gone on the field trip to Six Flags. Johnson related that on returning to the school after the trip, a gang fight started when Timothy Davis struck Johnny Hodges. Baker, who had been holding some stuffed animals, dropped the animals and ran over to aid Hodges. By this time, "everybody was fighting," and as Baker ran along, defendant stabbed him with an 8- to 10-inch-long chrome object in the left side of the neck. Johnson indicated that defendant and Baker had not actually been fighting, but that Baker was simply running past defendant when defendant stabbed him. According to Johnson, "I guess Ron thought he was coming at him ***."

Cedric Stewart, a 13-year-old student from Clark Junior High, was also called by the prosecution. Stewart, a Vice Lord, was another participant in the field trip to Six Flags. He reported that while

there, he was given a spike-like metal object about a foot long by another student named Aron Ellis. Defendant then asked Stewart for the spike, which he gave to him. According to Stewart, defendant returned the spike to him after the fight and told him that he had stabbed Baker. Stewart, in turn, gave the spike to a girl known to him as Lulu.

Lulu was Latricia Shumpert, a 17-year-old student from Norman Senior High School. Shumpert testified that she also had gone on the field trip to Six Flags. She recalled that she was with defendant and some others when Baker approached the group along with some of his friends including "some Girl Disciples," known as "D-Queens." According to Shumpert, Baker came up and asked "why they was trying to disrespect the D-Queens and all of this stuff." A few words then passed between them. Shumpert said that defendant did not threaten Baker but conceded that he did say something to the effect of, "Wait till we get back to school." Shumpert corroborated that after returning home from Six Flags, she was given the metal rod which had been used by defendant to stab Baker, although she stated that at the time she did not know what it was or that it had been used in the stabbing. She discarded the metal rod later that evening, and it was never recovered.

After being stabbed, Baker was taken by private car to the hospital, where he died. An autopsy was performed on Baker's body by Dr. Raj Nanduri, a pathologist, at Officer's Funeral Home in East St. Louis. Dr. Nanduri's examination revealed that Baker sustained a four- to six-inch-deep stab wound in the left side of his neck. The wound travelled from the left to the right "towards the mid-line and in a downward course." It pierced the soft tissues of both sides of the neck, as well as the laryngotrachea and the carotid artery. Dr. Nanduri explained that the carotid artery is a major artery which serves to supply blood to the brain. He testified that the wound resulted in extensive blood loss and that this blood loss was the immediate cause of Baker's death.

Following Baker's death, defendant was arrested and charged with murder. After being taken into custody and advised of his constitutional rights, defendant gave a statement to the police. In that statement, dated May 27, 1986, defendant indicated that on the previous Friday, Baker and two other boys had pulled a gun on him in the bathroom at school. The confrontation ended when someone reported that a security guard was coming. Nothing further happened at that time.

Defendant confirmed that an argument had broken out at Six

Flags between members of the Vice Lords and members of the Disciples. He reported that on returning home after the field trip a number of Disciples, none of whom he knew, were waiting. As he got off the bus he began looking for his brother, but could not find him. He then walked over to a patio leading to the adjacent Kennedy Elementary School, where "[t]here was a lot of Vice Lords and Disciples there." Defendant stated that Johnny Hodges hit Tim Davis and then "they all started fighting." He said that he was "real close" to fighting with "some Mexican," when Baker came over to where he was standing. Defendant stated that he was then hit with a Six Flags bat. At that point, he swung "an aluminum piece about a foot long, like a dart pointed at the end, and hit Baker. [He] pulled it out and ran over to the side of the building." He then fled from the school grounds, where he met one of his brothers and others, including Cedric Stewart, who asked that the metal rod be returned to him. He returned the rod to Stewart, after which he was driven to his brother Lewis's house, where he spent the night.

Three witnesses were presented for the defense. Brian Holmes, 15, and Ron Pruitt, 17, each confirmed that an argument had taken place at Six Flags between the Disciples and the Vice Lords. In addition, Pruitt told the jury that on his return from the amusement park, "grown people" he thought might be Disciples were waiting on school grounds. He observed the gang fight break out and testified that he saw someone wielding a cane.

Defendant then took the stand on his own behalf. He recalled that when the fight broke out between the Disciples and the Vice Lords, people grabbed anything they could, including sticks, bricks, and bottles. He claimed that he was not involved in the fight at first, but was then struck in the head with a bat. He ducked down and was punched repeatedly. As he started to stand upright again, he saw someone coming directly toward him, hand raised, holding something in that hand. He could not identify what the person was holding, but said, "I think I seen something shiny or something." Defendant testified that he felt scared, and that he just "swung over" at the person with the metal rod given to him by Cedric Stewart, after which he "took off running." The person he struck was Baker. According to defendant, he was not aiming for any certain part of Baker's body, but "just swung, trying to get [Baker] off of me."

Defendant told the jury about the incident, set forth in his prior statement to the police, in which he had been confronted by Baker and two other boys at gunpoint. He also stated that when he swung the metal rod, he felt threatened, but did not think that it would

cause someone's death. On cross-examination, defendant admitted that he had argued with some Disciples while at Six Flags, but indicated that he was uncertain as to whether Baker was among them. He further claimed that when he swung the metal rod during the fight, he did not know that it was Baker he stabbed. When asked why he was carrying the metal rod, defendant denied that he had kept it as a weapon. The only explanation he could offer, however, was that "I just kept it because I had it in my pocket."

Following closing arguments by counsel, the jury was instructed on the applicable law. Included were instructions not only on murder, but also on "unreasonable belief" voluntary manslaughter, self-defense, and involuntary manslaughter. After reading these instructions to the jury, the court told the jurors that "in my consideration you should deliberate" the most serious charge, murder, first. The jury was then told that if it found defendant not guilty of murder, it should proceed to the second most serious charge, voluntary manslaughter. If, in turn, it found defendant not guilty of voluntary manslaughter, it should move to consideration of the charge of involuntary manslaughter. Based upon these instructions, the jury conducted its deliberations and returned a verdict of guilty on the charge of murder. The verdict forms relating to voluntary manslaughter and involuntary manslaughter were not signed. Defendant's motion for a new trial was denied, and he was sentenced to a term of imprisonment of 25 years. This appeal followed.

As indicated at the outset of this opinion, defendant first argues that the State failed to prove him guilty of murder beyond a reasonable doubt because the evidence did not establish that he possessed the requisite mental state. In defendant's view, what the testimony and exhibits adduced at trial did show was simply that he acted recklessly when he stabbed Baker with the metal rod, but that he never intended to kill Baker. In the alternative, he asserts that even if the jury could have concluded that he intended to kill Baker, the record established that he believed that he was justified in using the force he did to defend himself, although that belief was unreasonable. Accordingly, he contends that his murder conviction should be reduced to involuntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)) or, at most, "unreasonable belief" voluntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b)).

■ Whether a homicide is murder or manslaughter, or whether it is justified as self-defense, are questions to be determined by the trier of fact. (*People v. Greene* (1987), 160 Ill. App. 3d 1089, 1095, 513 N.E.2d 1092, 1096.) Although this court has the power to reduce a

defendant's murder conviction to manslaughter pursuant to Supreme Court Rule 615(b)(3) (107 Ill. 2d R. 615(b)(3)), that power should be cautiously exercised. (*People v. Greene*, 160 Ill. App. 3d at 1098, 513 N.E.2d at 1098.) Under the circumstances present here, we find no basis for disturbing the jury's determination that what the defendant did constituted murder.

■ Under section 9—1(a) of the Criminal Code of 1961:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another ***."

(Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).)

In this case, there is no dispute that defendant's actions caused Baker's death. What is an issue is defendant's intent. Under Illinois law, the State is not required to prove that a defendant had the intent to murder; it need only show that a defendant voluntarily and willfully committed an act, the natural tendency of which was to cause death or great bodily harm. This intent may be implied or inferred from the surrounding facts and circumstances, including defendant's words and actions, and from the character of the acts themselves. *People v. Floyd* (1987), 160 Ill. App. 3d 80, 84, 512 N.E.2d 1378, 1381.

■ As our discussion of the record has shown, defendant was not an innocent bystander who happened to find himself in the middle of the melee which broke out at the King Junior High School on the night of May 24. This was a gang fight, and defendant was a member of one of the gangs involved. His victim, Baker, belonged to the opposition. Days before the confrontation, Baker had threatened defendant at gunpoint. On the day of the fight itself, rival gang members argued, and defendant was a party to that argument. According to one witness, so, too, was Baker. Perhaps sensing the confrontation which was to come, defendant armed himself with the metal rod provided by fellow gang member Cedric Stewart. Although defendant would not admit that he kept the rod as a weapon, he could offer no other plausible explanation as to why he carried it through the day and into the fight.

Virtually all of the eyewitnesses to the stabbing related that no one other than defendant carried any type of weapon during the

fight. According to these witnesses, Baker was unarmed as he ran among the combatants. Depending upon which witnesses the jury believed, Baker was either running past defendant (not at him), or was getting up after being thrown to the ground by one of defendant's fellow gang members, or was struggling to get out of the crowd after being struck, or had been attacked by defendant when defendant stabbed him. The stabbing was so severe that the metal rod nearly went all the way through Baker's neck.

Under these circumstances we believe that the jury could certainly have concluded that the stabbing death of Baker did not result from any reckless act by defendant or any subjective belief on his part that use of the metal rod was necessary to defend against an imminent threat of death or great bodily harm, but rather was the product of a calculated and premeditated effort by defendant to take revenge against a rival gang member with whom he had previously quarreled. The act was willful and its lethal consequences apparent. While defendant himself claimed that he thought Baker was going to attack him with a weapon, that others in the fight were armed, that he was scared, and that he simply swung out with the rod to escape after being hit with a bat, the jury, as judge of the witnesses' credibility, was not required to believe defendant's exculpatory testimony. (*People v. Floyd* (1987), 160 Ill. App. 3d 80, 85, 512 N.E.2d 1378, 1382.) We therefore cannot say that the State failed to meet its burden of proof.

■ Defendant next argues that the trial court erred when, after instructing the jury on the elements of murder, voluntary manslaughter, and involuntary manslaughter, it recommended that the jurors deliberate on the murder charge first and consider the manslaughter charges only if they first found defendant not guilty of murder. In defendant's view, this recommendation constituted reversible error because it served to de-emphasize the manslaughter charges and to encourage the jury to return a verdict of guilty on the charge of murder. Without addressing the merits of this claim, we note simply that defense counsel failed to object to the challenged remarks when they were made. The error, if any, has therefore been waived. *People v. Pastorino* (1982), 91 Ill. 2d 178, 188, 435 N.E.2d 1144, 1149.

Despite the absence of a timely objection, defendant argues that we should nevertheless consider his argument on appeal under the doctrine of plain error. This we decline to do. As in *People v. Pastorino*, where a similar argument was made, the evidence in this case is not so closely balanced as to prompt us to look past the lack of objection. The jury here was instructed on voluntary and involuntary manslaughter, as requested by defendant. Nevertheless, as our pre-

vious discussion has suggested, there was little evidence which would justify mitigation of defendant's crime from murder to these lesser offenses. What mitigating evidence there was came from defendant himself, and the jury apparently found defendant's testimony to be less than credible.

■ Defendant raises several additional challenges to the jury instructions. First, he claims that where, as here, the jury is asked to deliberate on both murder and "unreasonable belief" voluntary manslaughter charges, it must be instructed that in order for the State to secure a conviction for murder, it must prove beyond a reasonable doubt that the defendant did not have an unreasonable belief that the force used was justified under the circumstances. That was not done in this case. Here the murder instruction provided as follows:

"To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Richard Baker; and

Second: That when the defendant did so,

(1) he intended to kill or do great bodily harm to Richard Baker; or

(2) he knew that his act would cause death or great bodily harm to Richard Baker; or

(3) he knew that his acts created a strong probability of death or great bodily harm to Richard Baker; and

(4) that the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from their consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

This instruction is drawn from Illinois Pattern Jury Instructions, Criminal, Nos. 7.02, 24—25.06A (2d ed. 1981) (hereinafter IPI Criminal 2d). In defendant's view, this instruction was fatally defective and violated his constitutional right to due process of law because it did not include as an additional proposition that defendant did not believe, unreasonably, that circumstances existed which justified the use of the force which he used.

A similar argument was rejected by this court in *People v. Williams* (1980), 80 Ill. App. 3d 963, 400 N.E.2d 532. In support of his claim, defendant cites a series of more recent decisions from other

districts, including *People v. Bolden* (1985), 132 Ill. App. 3d 1047, 477 N.E.2d 1380, *People v. Williams* (1985), 134 Ill. App. 3d 334, 480 N.E.2d 205, *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872, *People v. Bushman* (1986), 144 Ill. App. 3d 1022, 495 N.E.2d 119, and *People v. Chevalier* (1988), 167 Ill. App. 3d 790, 521 N.E.2d 1256. In light of this more recent precedent, defendant urges us to abandon our holding in *Williams*.

A threshold problem with defendant's claim is that the instruction he now challenges was tendered by his own attorney. Because defendant has not alleged that his trial counsel was ineffective for submitting this instruction, we believe that he is estopped from having us consider the issue. (*People v. Davis* (1985), 140 Ill. App. 3d 265, 268, 488 N.E.2d 554, 556.) Defendant argues that we should nevertheless consider this claim of error because the defect in the instruction constitutes plain error cognizable under Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)). What defendant fails to realize is that Supreme Court Rule 451(c) has no application here. That rule provides that substantial defects in criminal instructions "are not waived by failure to make timely objections thereto if the interests of justice require." (107 Ill. 2d R. 451(c).) By its terms, the rule applies to situations where counsel has failed to object to a particular instruction. Here, however, the problem is not that defendant failed to object, but that he actually tendered the instruction and is therefore estopped from challenging it. Rule 451 is not addressed to such situations. *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 773, 445 N.E.2d 1213, 1221.

■ The other basic objection which defendant raises regarding the jury instructions concerns the instructions on involuntary manslaughter. The court read to the jury an instruction, based on IPI Criminal 2d No. 7.07, which defined involuntary manslaughter. The instruction provided:

> "A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual without lawful justification by acts which are performed recklessly and are likely to cause death or great bodily harm to another."

The court also read to the jury an issues instruction on involuntary manslaughter. That instruction provided:

> "To sustain the charge of involuntary manslaughter, the State must prove the following propositions:
>
> First: That the defendant performed the acts which caused the death of Richard Baker; and
>
> Second: That the defendant performed those acts recklessly; and

Third: That those acts were likely to cause death or great bodily harm.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Defendant takes issue with each of these instructions. With respect to the first, he argues that the Committee Note to IPI Criminal 2d No. 7.07 indicates that where this instruction is used IPI Criminal 2d No. 5.01, which defines "recklessness," should also be given, but that such an instruction was not given in this case. With respect to the issues instruction, defendant points out that where, as here, a charge of involuntary manslaughter is involved, and some evidence of self-defense is present, lawful-justification phraseology must be included in the issues instruction for the manslaughter offense. (*People v. Thurman* (1984), 104 Ill. 2d 326, 331, 472 N.E.2d 414, 416-17.) As is evident from the text of the instruction quoted above, such phraseology was not included here.

In our view, neither of these claimed errors justifies a new trial. As to the failure to give an instruction defining the term "recklessness," we note that defendant did not tender such an instruction himself, nor did he complain of the absence of such an instruction in his motion for a new trial. The issue has therefore been waived. *People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414, 415; *People v. Foster* (1982), 103 Ill. App. 3d 372, 376, 431 N.E.2d 430, 434.

■ Defendant nevertheless argues that omission of this instruction was an error so grave and fundamental that the interests of justice require that the waiver rule be relaxed and that we should now hold that the trial court had an obligation to submit the missing instruction on its own motion. While we agree that a trial court bears the responsibility of seeing that the jury is properly instructed on the elements of the crime charged, on the presumption of innocence, and on the question of the burden of proof, even in the absence of a defense request (*People v. Williams* (1981), 97 Ill. App. 3d 394, 400, 422 N.E.2d 1091, 1096), we also note that error by the trial court in failing to give an instruction will not always justify reversal and that reversal is not warranted where it can be said that the result of the trial would not have been different if the instruction had been given. *People v. Terry* (1987), 154 Ill. App. 3d 162, 165, 506 N.E.2d 786, 788.

In our view, this is such a case. From the record, it is evident that defendant acted intentionally, not recklessly, when he stabbed Baker, and the jury so found. We fail to see how any further definition of "recklessness" could possibly have altered this conclusion so as to warrant reduction of defendant's conviction from murder to involuntary manslaughter. See *People v. Maldonado* (1971), 3 Ill. App. 3d 216, 225, 278 N.E.2d 225, 231.

■ As for the instruction setting forth the elements of involuntary manslaughter, we note that the instruction was tendered by the defense. For reasons previously discussed, defendant is therefore estopped from challenging its propriety. Although defendant argues that the doctrine of estoppel should not be invoked because the decision by his attorney at trial to tender the challenged instruction was such a substantial mistake that it constituted ineffective assistance of counsel, this contention was not raised until defendant filed his reply brief, and it is not supported by any citation of authority. It has therefore been waived. *People v. Thomas* (1987), 116 Ill. 2d 290, 304, 507 N.E.2d 843, 849, *cert. granted sub nom. Patterson v. Illinois* (1987), 484 U.S. 895, 98 L. Ed. 2d 186, 108 S. Ct. 227; see *People v. Shaw* (1985), 133 Ill. App. 3d 391, 404, 478 N.E.2d 1142, 1153; 107 Ill. 2d R. 341.

■ Defendant next asserts that even if none of the instructional errors was sufficient, standing alone, to warrant a new trial, the cumulative effect of the errors was to produce instructions "so confusing that the jury's verdict is suspect and cannot stand." This issue, like others raised by defendant, was not presented to the trial court and is being raised for the first time on appeal. Putting this problem aside, we note again simply that the evidence is so clear and convincing that the jury could not reasonably have failed to reach the verdict it did. (See *People v. Jones* (1979), 81 Ill. 2d 1, 9, 405 N.E.2d 343, 346.) There is no indication that the jury was confused in any way. Any instructional error committed by the trial court is therefore harmless.

■ Because we have concluded that no grounds exist which would warrant the reduction of defendant's conviction for murder or justify a new trial, the murder conviction shall stand. This, however, does not end our discussion. One further matter remains. Defendant contends that even if his murder conviction is proper, the cause should nevertheless be remanded for resentencing. We disagree.

Under section 2—7(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)), a minor who is at least 15 years of age and who is charged with one of four enumerated offenses, including

murder, is to be prosecuted under the Criminal Code of 1961, as amended (Ill. Rev. Stat. 1985, ch. 38, par. 1—1 *et seq.*). (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a).) On this appeal, defendant's attorney argues that where, as here, the minor is ultimately convicted of one of those four enumerated crimes, the criminal court judge has the discretion to adjudicate the minor delinquent pursuant to the Juvenile Court Act, to impose juvenile punishment on the minor, or to sentence the minor pursuant to the Criminal Code. (See Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c); *People v. Gutierrez* (1987), 156 Ill. App. 3d 555, 559, 509 N.E.2d 787, 790.) In this case, the circuit court sentenced defendant pursuant to the Criminal Code. Defendant argues that this sentence should be set aside and the cause remanded for resentencing because the trial judge thought that he was bound by the provisions of the Criminal Code, and did not realize that dispositions under the Juvenile Court Act were also available to him.

The State takes issue with defendant's interpretation of section 2—7(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)). In the State's view, prosecuting a juvenile for one of the four enumerated offenses in criminal court, then disposing of the case under the Juvenile Court Act once a conviction has been obtained, would thwart the legislature's goal of prosecuting serious juvenile offenders as adults and punishing them in a manner commensurate with the magnitude of the offense. The State therefore argues that once a juvenile who is 15 years old or older is convicted of one of the four offenses enumerated in section 2—7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a)), the circuit court has no option but to sentence the juvenile under the Criminal Code.

The dispute between the State and the defendant poses a difficult question of statutory construction, but it is a question which need not be addressed in this case. The reason is apparent from the record. At trial, defendant's attorney made no objection of any kind to the circuit court's decision to sentence defendant under the Criminal Code. To the contrary, the defendant's attorney expressly requested at the sentencing hearing that the court sentence defendant to a term of imprisonment of 20 years, the minimum term specified for murder under section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)). Where, as here, defense counsel in effect invited the court to sentence his client as an adult, we cannot allow the defendant to successfully complain on appeal that the circuit court abused its discretion in proceeding as it did under the Criminal Code. (See *People v. Gutierrez* (1987), 156 Ill. App. 3d 555, 559, 509 N.E.2d 787, 790.) No claim has been made that the deci-

sion by defendant's attorney at trial to proceed in this matter constituted ineffective assistance of counsel, and we therefore find no basis for disturbing the trial court's sentence.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CALVO and KARNS, JJ., concur.