THE STATE OF OHIO, APPELLEE, *v.* TAYLOR, APPELLANT.

(No. 30098—Decided March 3, 1972.)

*Mr. John T. Corrigan,* prosecutor, for appellee.
*Messrs. Gold, Rotatori, Messerman & Hanna,* for appellant.

I.

DAY, C. J. This case comes here on permissive appeal seeking relief from the consequences of a plea of guilty in 1964 in a first degree murder case. The "defendant" will

be referred to hereafter as the "appellant" or the "defendant."

## II.

The transcript of proceedings indicates that the decedent, defendant's estranged wife, worked in a restaurant in an office building in downtown Cleveland and that the defendant arrived there on the morning of March 16, 1964, sometime before she was due to report for work (Tr. 85-88). When she arrived he shot her (Tr. 304, 305, 328, 330). The shooting took place sometime after 7:00 a. m. (Tr. 85-88, 98).[1] Later he made an uncounselled statement to the police without the safeguarding warnings contemplated in *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 12 L. Ed. 2d 977. The statement included these words—"I decided to shoot my wife this morning about 6:30" (Tr. 54, *et seq.*). After the entering of a plea of guilty to murder in the first degree, trial was had by a three-judge court to determine the degree of the offense only.[2]

We affirm.

## III.

There are two assignments of error briefed separately in two documents denominated "Brief" and "Supplemental Brief."

The assignment treated in the "Brief" travels on the theory that the appellant had ineffective counsel [cf. *Powell* v. *Alabama*, 287 U. S. 45, 53, 77 L. Ed. 158, 162 (1932)], on the trial of the issue of degree of offense. Mainly this argument rests on the notion that his two lawyers were not

---

[1] There was an abundance of record evidence chronicling the facts relevant to the shooting and defendant's condition and participation as well as the events preceding and including the climactic action in the case. See Tr. 90-91 (time spent awaiting the victim); Tr. 92, 93, 105 and cf. 195-196 (defendant's condition as it pertained to intoxication); Tr. 90-91, 99-105, 113-120, 131 (identity of the defendant as the person who did the killing); Tr. 145-148 (ballistic evidence).

[2] See R. C. 2945.06; cf. R. C. 2945.74. Both statutes are reproduced in relevant part under IV in the text of the opinion. Actually, it is only Sec. 2945.06 which is germane to this case. R. C. 2945.74 simply shows another aspect of Ohio's statutory safeguards for defendants.

up to standard because they stipulated admission of a statement by him taken without the warnings *Escobedo* requires. It is argued that the focus of investigation was on the defendant at the time.[3] It is also argued that the statement thus put into evidence contained admissions by the defendant practically foreclosing any chance for less than a first degree conviction on the issue of degree of culpability.

What is unique about the first claim of error is that it is assigned by one of the lawyers who engineered the stipulation—the same stipulation that is held up to this court as the example proving counsel's miscreance. It is not often that an ineffective counsel argument is advanced by a lawyer on the basis of a *mea culpa*.[4]

We are not impressed by the first assignment. It appears to us that the very considerable evidence available on the degree of culpability (cf. Tr. 90-91; 99-105; 113-120, 131) probably lead lawyers of the skill and experience involved here to put the statement of their client into evidence to get him whatever advantage could be acquired from candor. At best it was a ploy, at worst something akin to invited error. Either, in our view, shrives the action of counsel from any constitutional infirmity of advantage to their client. See *Henry* v. *Mississippi* (1965), 379 U. S. 443, 451, 13 L. Ed. 2d 408, 415:

"* * * If either reason [strategy to discredit witness or to invite error] motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of strategy would amount to a waiver binding on

---

[3] See *Escobedo* v. *Illinois*, *supra*. *Escobedo* was not decided until June 22, 1964. The statement in issue in this case was taken shortly after the arrest on March 16, 1964 (Tr. 52-62). *Escobedo* is not retroactive and the principle it announces applies only to "cases commenced after those decisions [*Escobedo* and *Miranda* v. *Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694 (1966)] were announced." *Johnson* v. *New Jersey*, 384 U. S. 719, 733, 16 L. Ed. 2d 882, 892 (1966). "Cases" refers to trials, and this trial began on October 26, 1964, after the crucial date. Thus the question of admissibility is significant.

[4] Co-counsel is since deceased.

petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here \* \* \*." (Bracketed material supplied.)

## IV.

There remains only the second assignment of error elaborated in the Supplemental Brief of the appellant. The basis for this assignment is involuntariness based on the claimed ignorance of the defendant of the consequences of his plea at the time he made it. Appellant's contention focuses on two Ohio statutes:

R. C. 2945.06:

"\* \* \* If the accused pleads guilty of murder in the first degree, a court composed of three judges shall examine the witnesses, determine the degree of crime, and pronounce sentence accordingly. In rendering judgment of conviction of an offense punishable by death upon plea of guilty, or after trial by the court without the intervention of a jury, the court may extend mercy and reduce the punishment for such offense to life imprisonment in like manner as upon recommendation of mercy by a jury \* \* \*."

R. C. 2945.74:

"\* \* \* If the offense charged is murder and the accused is convicted by confession in open court, the court shall examine the witnesses, determine the degree of the crime, and pronounce sentence accordingly."

However, as noted in footnote 2, it is only R. C. 2945.-06 which is involved here.

In essence, the argument rests on the assertion that Ohio's statutory scheme for degree of culpability hearings on pleas of guilty to murder one affects the present defendant's constitutional protections in a manner which deprives him of rights which are at the very heart of due process.

It is argued that the plea of guilty followed by a hearing on degree of guilt is confusing, and so confused the lawyers and the judges in this case, that *a fortiori*, the defendant could not understand what he was doing. Such was the degree of the defendant's confusion, it is argued,

that he could not have made a knowing, intelligent plea, *Boykin* v. *Alabama* (1969), 395 U. S. 238, 23 L. Ed. 2d 274. Indeed, it is asserted that this is a more compelling case for reversal than *Boykin* because in *Boykin* the court would not sustain a plea where intelligent knowledge in the defendant had to be supported on a silent record, while in the present case the record, far from silent, clearly exemplifies the defendant's lack of comprehension.[5]

Furthermore, appellant argues, all the consequences which flow from the plea were not understood by the appellant because "uncertain and undefined, if not unknown" (Supp. Brief, p. 7), and because there is no affirmative demonstration in the record that the defendant was in any way apprised of the possible import of the plea under the statute. Such consequences are said to include:

1. Waiver of the presumption of innocence;

2. Excusing the prosecution from the burden of proving its case beyond a reasonable doubt and substituting a lower standard of proof than is normal for a criminal case;

3. Consideration of the guilty plea by the three-judge court as evidence of guilt; and

4. Barring the defendant from challenging the sufficiency of the evidence in post trial proceedings.[6]

In fine, the contention is that the listed insufficiencies with respect to a knowledgeable plea have deprived the defendant of due process of law contrary to the Fourteenth Amendment to the United States Constitution.

Appellant suggests at page 3 of his Supplemental

---

[5] Appellant points to his consistent denial of (1) matter germane to premediation and deliberation, elements explicit in first degree murder, and (2) the correctness of his alleged statements with respect to the time he decided to shoot his wife as well as his testimony in explanation of his refusal to sign the statement because of its error. All of this, appellant argues, contradicts the plea, indicating a lack of comprehension (p. 6, Appellant's Supplemental Brief).

[6] The list of claimed consequences is a summary from page 7 of the appellant's Supplementary Brief. In oral argument the suggestion was also made that the plea waived the privilege against self-incrimination—another consequence not specifically called to the defendant's attention.

Brief that recent cases, e. g., *Boykin* v. *Alabama* (1969), 395 U. S. 238, 23 L. Ed. 2d 274 and *Brady* v. *United States* (1970), 397 U. S. 742, 25 L. Ed. 2d 747, indicate that the standards of Rule 11, Federal Rules of Criminal Procedure, as amended, apply to the states. The essence of Rule 11 is:

" * * * The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea * * *. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

## V.

There can be little doubt that a plea of guilty waives a cluster of constitutional rights, including the privilege against self-incrimination, trial by jury, confrontation and cross-examination. *Boykin* v. *Alabama,* id., at 243, 23 L. Ed. 2d at 279; *McCarthy* v. *United States* (1969), 394 U. S. 459, 466, 22 L. Ed. 2d 418, 425.[7] However, Rule 11 is a federal rule and the responsibility for a full and detailed recital of consequences had not been placed upon the state courts at the time of the appellant's plea in 1964. The bland inquiries as to understanding of rights and consequences made at that time (Tr. 6-7) were not sufficient looking backward from the heights of *Boykin* but certainly were consonant with the then contemporary practice. It is of some consequence, too, that the appellant was represented by counsel with whom he said he had consulted and reached an understanding of the consequences (Tr. 6-7). While we cannot know what the substance of the consultation was and do not adopt an *ad hominem* argument as evidence of the competence of the advice, it is the fact that counsel were experienced and presumably knew the facts which the hearing on the degree of culpability eventually elicited.

---

[7]For additional consequences see Criminal Practice and Procedure, 15A Ohio Jurisprudence 2d, Section 200, page 406.

Any perceptive counsel with those facts in hand could justify the tactical judgment to plead guilty coupled with the degree trial. Without implying that overwhelming evidence of guilt[8] necessarily forecloses a judgment to plead not guilty, as certainly it does not foreclose the right, the posture of the evidence is a major consideration in the decision to waive constitutional rights and to plead. Nor is there necessary inconsistency evidencing a lack of understanding by virtue of the attempt to prove the lack of premeditation and deliberation at the degree of culpability hearing. On the contrary such evidentiary efforts indicate a quite sophisticated comprehension of the consequence should premeditation and deliberation be disproved. And if such attempts at "dis-proof" were not contemplated by the statute, no hearing on degree would make sense.

## VI.

Although there is a seeming contradiction in taking evidence on the degree of culpability after a plea to murder one it is resolved in the light of the appropriate concern of the law to especially safeguard a defendant's rights, regardless of his having plead to first degree murder and whether or not he may fully understand the consequences. Even with apparent understanding he still may lack sufficient legal knowledge to fully determine whether the facts justify a finding of guilty to the offense to which he plead, to a lesser included offense, or conceivably, to a finding of not guilty. These possibilities point up a shortcoming which the competence of a three-judge court, hearing evidence on the degree of culpability, can fully overcome. This is the obvious aim of the culpability hearing and dissolves any seeming contradictions. The purpose of the statute is to insure that the defendant not be sentenced on a plea of more gravity than the evidence will support.

---

[8] Such a balance of evidence is, of course, a factor in determining whether a constitutional error has been harmless beyond a reasonable doubt. Cf. *Chapman* v. *California* (1967), 386 U. S. 18, 23, 17 L. Ed. 2d 705, 710; *Harrington* v. *California* (1969), 395 U. S. 250, 23 L. Ed. 2d 284. Some errors, such as lack of counsel, may be so egregious that no balancing of harm will be indulged, *Chapman* v. *California, id.*

This is so, even though the pleader may understand consequences of the plea to first degree and even though he apparently pleads to it voluntarily. What he may not understand, and what the statute protects against, is that he may have plead to a crime of more gravity than the evidence will justify and which his layman's competence was not able to assess without the understanding supervision of the three-judge court. Viewed in this perspective, the hearing on degree of culpability after a plea to murder one is not a contradiction. It is insurance which the law takes out against the *professional* incompetence of a layman.

### VII.

There is the further circumstance that in this case the transcript of proceedings reveals a full hearing treating the substance of the charge in depth with the right to counsel, confrontation and cross-examination fully protected and all other procedural proprieties observed. To the suggestion that the defendant uncomprehendingly waived his right not to testify, the obvious rejoinder is that his guilt was proven beyond peradventure by independent sources. Under such conditions his own testimony could hardly have worsened his situation. That the three-judge court extended mercy argues that appellant's testimony helped rather than hurt his cause—a strong basis for a finding of harmless error.

### VIII.

Appellant claims that his plea, in the hearing provided in R. C. 2945.06, will be treated as evidence. This is likely to be true, but the very purpose of R. C. 2945.06 is to test that evidence. Indeed, if the plea were regarded as evidence absolute, the procedure after plea would be pointless and the statute so faulted it ought to be discarded. If, however, the purpose of the statute is to measure the basis for the plea, as it obviously is, then it is an important safeguard for a defendant. But in any event, the independent evidence of guilt in this record was of such strength that recourse to the plea as evidence in this case would cause only minuscule additions to weight.

The same independent evidence brings down the presumption of innocence as effectively as any waiver could. And the same evidence makes it very difficult to argue persuasively that the proof did not meet the ''beyond a reasonable doubt'' standard. Moreover, this is the criterion the state would have to satisfy on the degree issue in the hearing under the statute.[9]

While it has been held that a defendant may not attack the sufficiency of the evidence on appeal after a plea of guilty, *State* v. *Hertz* (App. Franklin Cty., 1954), 135 N. E. 2d 781, the statute now in issue obviously does not contemplate pleas to murder one except in the face of evidence heavily weighted toward guilt. As a practical matter such cases disposed of on pleas are not apt to excite appeals. More to the point, since the *Hertz* case did not involve a murder case, nor a degree hearing, it can hardly be authority for blocking an appeal from the decision after proceedings under R. C. 2945.06.

Of course, the plea, as such, would not bar any appropriate post-conviction remedy. However, it may well be that a sufficiency of the evidence claim would be closed off from post-conviction relief for other reasons, see *State* v. *Perry* (1967), 10 Ohio St. 2d 175, not relevant to a plea.

We find the second assignment of error without merit. The judgment is affirmed.

*Judgment affirmed.*

Silbert and Krenzler, JJ., concur.

---

[9]Premeditation and deliberation is an element of the offense of murder one. And see *Morehead* v. *State* (1877), 34 Ohio St. 212, 217, ''. . . the state must prove the material elements of the crime beyond a reasonable doubt. . . .''