Argued and submitted January 30, affirmed August 3, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# JOSEPH W. THOMAS,
*Appellant.*

(C 80-03-30927; CA 18272)

631 P2d 1387

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction of Rape in the First Degree (ORS 163.375), assigning error to the trial court's ruling permitting (more accurately, requiring) defense counsel to testify on rebuttal for the state. He contends that he was denied the right to a fair trial and to the effective assistance of counsel under both the United States[1] and Oregon[2] Constitutions. For the reasons hereafter stated, we conclude there was error, but that it was invited, and that the questions now presented cannot be raised on direct appeal. Accordingly, we affirm.

Defendant, in the company of a friend, allegedly raped a young woman in her apartment at approximately 12:20 p.m. on February 28, 1980. In the afternoon of the day before trial, defense counsel notified the Deputy District Attorney by telephone that Anne Foster would be called as an alibi witness and that she would testify that the defendant was in the Lloyd Center Meier and Frank store between noon and 1 p.m., on the 28th of February. The witness was not listed in the police report or in the "Notice of Intent to Rely on Alibi Evidence" which was filed and

---

[1] The Fifth Amendment to the United States Constitution provides in part:

"No person shall * * * be deprived of life, liberty, or property, without due process of law; * * * ."

The Sixth Amendment to the United States Constitution provides in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

The Fourteenth Amendment to the United States Constitution provides in part:

" * * * No State shall * * * abridge the privileges or immunities of citizens of the United States; nor * * * deprive any person of life, liberty, or property, without due process of law; * * * ."

[2] Article I, section 10, of the Oregon Constitution provides in part:

" * * * [J]ustice shall be administered, openly and without purchase completely and without delay, and every man shall have remedy by due course of law * * * ."

Article I, section 11, of the Oregon Constitution provides in part:

" * * * In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * * ."

served upon the District Attorney on May 5, 1980, pursuant to ORS 135.455.[3]

At a pretrial hearing on the morning of the first day of the trial, May 15, 1980, the Deputy District Attorney notified the court that she would object to the calling of Ms. Foster. Defense counsel advised the court that he was somewhat unclear as to exactly what Ms. Foster's testimony would be, but stated that on at least one previous occasion Ms. Foster had said that the defendant and his companion were with her between noon and 1 o'clock.

The court told counsel that it would exclude Ms. Foster's testimony as a late alibi witness unless the state was given an opportunity to "check her out," and that the witness' testimony would be taken in an offer of proof before a ruling was made. The jury was then called and the trial began.

On the second day of trial, when the defense called Ms. Foster, the state objected, and the court took an offer of proof. The witness testified that defendant and his companion were at Meier and Frank talking with her during the period of time when the rape allegedly occurred. Defense counsel told the court that although he and his investigator had each spoken with Ms. Foster on several occasions, he had been unsure of what she would say until 9:15 that morning, the second day of the trial. He argued, however, that the District Attorney had notice of the fact that Ms. Foster possibly would testify to the hours between noon and 1 o'clock and that calling her as a witness would be no surprise to the District Attorney.

The court ruled that the defense would be allowed to call Ms. Foster, but that the state would be allowed to

---

[3] ORS 135.455 provides:

"If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise."

call defense counsel as a witness to testify to Ms. Foster's prior inconsistent statements. No objection was made to that ruling. The jury was recalled, and the court explained the delay to them as resulting from the fact that the witness was not listed on the pretrial notice of alibi witnesses required by the discovery statute. However, the court said, "In the interests of justice you should hear all the testimony that is available, even though there's been a deviation from the statute."[4]

Ms. Foster testified before the jury that defendant and his companion had a conversation with her in the cosmetics department at Meier and Frank for one or one and one-half hours on February 28, and that they did not leave until approximately 12:30. She testified that she remembered clearly that it was on a Thursday and that it must have been on the 28th because it was near the end of the month. She said that she had known the 12:30 time previously but had not told defense counsel or his investigator the exact time until the morning of the day of her testimony.

The investigator was called by the state after the court required defense counsel to make him available. He testified that he had spoken with Ms. Foster on one occasion near the end of March, at which time he showed her a photograph of the defendant. He further testified that she told him that she recalled having a 15 or 20-minute conversation with the defendant and his friend at around 1 o'clock and that she recalled the events of the day well, but was unsure of the exact date at that time. The investigator indicated that this information was transmitted orally to defense counsel, probably on the same day as the interview with the witness.

The state then called defense counsel as a witness; he did not object. He testified that he had several conversations with Ms. Foster and that in each conversation she either refused to specify the exact time of day or stated that she was not sure of the time. He also testified that he first learned the approximate time of day from the investigator

_____

[4] The court later informed counsel, on the record, but out of the presence of the jury, that he had never encountered a case with a more flagrant violation of discovery rules.

around April 1, but that he did not know what her exact testimony would be until the morning of that second day of trial. Defense counsel declined to cross-examine himself when invited to do so by the court, but he did make a responsive statement in which he testified that, although Ms. Foster gave inconsistent responses in some respects during the several conversations he had had with her, she was consistent as to the facts that she saw defendant on a Thursday, "probably that week," and "probably in the morning."

■     The propriety of requiring defense counsel to testify for the state as to *nonprivileged* matters in a criminal case is a question of first impression in Oregon, although the issue has been considered by other state and federal courts. It has been held that the mere fact that counsel is called to testify does not, as a matter of law, materially interfere with a defendant's right to counsel or deny a defendant a fair trial. *Kaeser v. State,* 620 P2d 872 (Nev 1980); *United States v. Freeman,* 519 F2d 67 (9th Cir 1975); *State v. Crissman,* 31 Ohio App 2d 170, 60 Ohio Op 2d 279, 287 NE2d 642 (1971); *State v. Sullivan,* 60 Wash 2d 214, 373 P2d 474 (1962); *Cohen v. United States,* 297 F2d 760 (9th Cir), *cert den* 369 US 865 (1962). However, a defendant's right to effective representation may be impaired while his counsel is on the witness stand for the prosecution, because:   (1) it is impossible for the defendant to consult with his attorney; (2) the defendant cannot call attention to any inaccuracy in the attorney's testimony or suggest proper questions for cross-examination; (3) it is difficult, to say the least, for the lawyer, as a witness, to determine what objections should be made to questions asked him; (4) it is difficult for the lawyer to determine what questions to ask himself on cross-examination, and if he attempts to cross-examine himself the proceedings may take on a ludicrous appearance, and (5) it is difficult for the lawyer to answer questions so as not to antagonize the jury and still maintain a favorable impression. *State v. Livingston,* 30 Ohio App 2d 232, 285 NE2d 75 (1972); *People v. Lathrom,* 192 Cal 2d 216, 13 Cal Rptr 325 (1961).

■     We add to that list of problems the fact that here defendant was left with an attorney who was put in the position of arguing to the jury that defendant had a valid

alibi defense, but who had testified for the state that a principal alibi witness' testimony was not very convincing. From defendant's standpoint, that position at best was tenuous, if not untenable. To say, as some courts have said, that requiring defense counsel to be a witness for the prosecution and at the same time to be sole counsel for the defendant should be avoided whenever possible, is a substantial understatement. *See Kaeser v. State, supra,* 620 P2d at 873-4; *State v. Reynolds,* 564 SW2d 874 (Mo 1978). Whether an attorney, in an adversary proceeding, is able to retain a truly adversary posture when it may appear to a jury that he is playing on both teams is at least problematical.

The difficulty here is that defendant's contentions in this court that he was denied the right to a fair trial and to the effective assistance of counsel were not raised below; there was no objection of any kind to the court's ruling or to counsel's being called as a witness by the state.

Omitting, for the moment, those questions, the question presented to the trial court was whether it should exclude Anne Fosters' testimony because she was not listed as an alibi witness in the notice required by ORS 135.455, or whether it should permit her to testify on the condition that the state be permitted to call defense counsel as a rebuttal witness to impeach Ms. Foster. We conclude that the former ruling would have been correct, the latter was error, at least without giving defendant an opportunity to consult with independent counsel.[5] There *may* have been a conflict of interest between defendant and his counsel, but we cannot tell that from this record. The question remains whether the error is reversible in this case.

---

[5] Defendant now argues that, because it may violate disciplinary rules of the Oregon State Bar for an attorney to allow himself to be put in a position of having to testify against his client, before allowing defense counsel to testify, the court, *sua sponte,* should have appointed another attorney to represent the defendant. That argument overlooks options available to the defense itself. Defense counsel could have withdrawn from the case or requested the appointment of substitute counsel to represent defendant while counsel was testifying. Neither was done here. Defendant relies on the following rules:

DR 5-101(B) provides in pertinent part:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, * * *."

■     ORS 135.455 mandates the exclusion of "eleventh-hour" alibi evidence, absent "good cause." *State v. Wardius,* 6 Or App 391, 394, 487 P2d 1380 (1971), *rev on other grounds,* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973); *State v. Pennington,* 28 Or App 331, 336-337, 559 P2d 915, *rev den* (1977). The defense was aware of the possibility of Ms. Foster's exculpatory alibi testimony two months prior to trial, yet failed to provide the state with statutorily mandated notice until the afternoon before trial. Superficially, at least, a substantial benefit was conferred upon *defendant* when the court allowed the alibi witness to testify, even though the state was allowed to call defense counsel to establish the prior inconsistent statements of the witness. Permission to call that witness, however, may have benefitted defense *counsel,* if failure to list her as an alibi witness was an oversight on his part or resulted from his failure to follow up on what her testimony would be so that she could be listed in the notice.[6]

As the record stands, the error was invited by counsel, and perhaps by defendant. Counsel was fully apprised of the court's position, did not object to it when it was announced, and did not object to being called by the state after he put on Ms. Foster while realizing he probably would be called by the state on rebuttal.

It may well be that defendant was denied a fair trial and the effective assistance of counsel in violation of both the United States and Oregon Constitutions, as he now contends. But we do not know that to be the case. It may be that counsel discussed the entire situation with defendant prior to the filing of his "Notice of Intent to Rely on Alibi Evidence" and that defendant participated in the tactical decision not to list Ms. Foster as a witness because of her vacillation, but hoping she would firm up her testimony prior to trial without the state's having an opportunity to question her in advance. The decision may have been a

---

DR 5-102(B) provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

[6] Two other alibi witnesses were listed in the notice and they, as well as defendant, testified.

calculated risk, including the risk that counsel could be compelled to testify for the state, in which defendant participated. If that is the case, he cannot now complain.

Before we could decide defendant's claims of denial of a fair trial and effective assistance of counsel, we would need a record addressing the questions we are now asked to decide. That is the function of post conviction relief,[7] not direct appeal.

Affirmed.

---

[7] ORS 138.510 to 138.680.