STATE OF NEBRASKA, APPELLEE, V. CHRIS ENGLEHART, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. VICKY ENGLEHART, APPELLANT.

437 N.W.2d 468

Filed March 24, 1989. Nos. 88-017, 88-018.

Calvin D. Hansen for appellants.

Robert M. Spire, Attorney General, and Marie C. Pawol for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

CARLSON, D.J.

Defendants, Chris and Vicky Englehart, appeal orders of the Dodge County District Court revoking probation, claiming (1) their guilty pleas to the welfare fraud charge and to the probation violation were not knowingly, voluntarily, and intelligently made; (2) they did not receive competent and effective assistance of counsel; (3) the probation revocations discriminated against them on the basis of poverty; and (4) the evidence was insufficient to support findings that they violated the probation orders. These cases involve identical questions of fact and law and were consolidated for argument. We affirm.

On December 1, 1986, the Engleharts were arraigned on the charges of welfare fraud. The informations alleged the Engleharts received $2,196 in welfare benefits between March 1

and June 30, 1985, to which they were not entitled. While receiving the benefits, the Engleharts filed periodic reports with the Department of Social Services stating that neither of them was employed, although Chris had been employed since shortly after they applied for benefits.

The Engleharts received a court-appointed attorney for the proceedings. The attorney did not appear at the arraignment. Each defendant waived the attorney's presence, after being informed the hearing could be continued if he or she wished, and entered a plea of guilty. The court accepted the guilty pleas as freely and voluntarily made and found the Engleharts guilty of welfare fraud.

On February 17, 1987, the judge sentenced both defendants to 3 years' probation. Under the orders of probation, each defendant was required to pay a $1,000 fine, restitution of half the welfare benefits received, court costs, and fees for the court-appointed attorney. Chris was ordered to pay $99.80 per month, and Vicky was ordered to pay $99.75 per month, beginning March 17, 1987, and continuing for 2 years. The court also ordered the Engleharts to sell their motorcycle, with an estimated value of $2,500, and apply the proceeds to the restitution orders.

The Engleharts made none of the monthly payments. The only money the court received was $450 in bond money, which was apparently turned over to be applied to the payments. Also, the parties never sold the motorcycle.

A hearing to revoke probation for violating conditions of probation was held on November 24, 1987. The Engleharts, with their attorney present, entered pleas of guilty to the probation violations. The court accepted the guilty pleas as freely and voluntarily made, and found the Engleharts had violated their probation.

The sentencing hearing was held on December 14, 1987. At the hearing, Vicky Englehart testified the couple had not made the payments because they could not afford to and the motorcycle was not sold because it needed repairs which the couple could not afford to make. She further testified that she needed to be available to take the couple's mentally handicapped child from school in the event of behavior

problems. The defendants introduced an itemization showing the family's income between February and November was $15,580.84 and the family's expenses were $15,580.

The court revoked the probation of the Engleharts and sentenced each of them to 1 to 3 years' imprisonment in the custody of the Nebraska Department of Correctional Services. Further, the court found $1,742 in restitution still owing and ordered the Engleharts to make monthly payments of $100 for 18 months, beginning within 2 months after their release from prison. The Engleharts appeal from the probation revocations.

The first and second assignments include alleged errors which occurred during the original proceedings. A probation order is a final, appealable order. *State v. Vernon*, 218 Neb. 539, 356 N.W.2d 887 (1984). The defendants did not appeal from the original convictions and, therefore, cannot attack the validity of the underlying convictions on appeals from probation revocations. *State v. Williams*, 194 Neb. 483, 233 N.W.2d 772 (1975). To the extent this appeal involves questions concerning the convictions for welfare fraud, the orders of the district court are affirmed.

Although the first assignment of error questions the voluntariness of the guilty pleas entered to the probation violations, the Engleharts do not specify how the proceedings were defective. The Engleharts were represented by counsel at the hearing. Further, the record shows the requirements of *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), were satisfied. Therefore, the trial court did not err in accepting the guilty pleas.

Secondly, the Engleharts argue the representation they received was ineffective, first, because of a conflict in representing both defendants at one time and, second, because their attorney allowed them to enter guilty pleas when there was a question of willfulness of the nonpayment.

Permitting a single attorney to represent codefendants is not a per se violation of the constitutional guarantees of effective assistance of counsel. *State v. Pope*, 213 Neb. 645, 330 N.W.2d 747 (1983). Multiple representation gives rise to a violation of the defendant's sixth amendment right to effective assistance of counsel only if an actual conflict of interest exists, and that

conflict affects the performance of counsel. *State v. Wilson*, 224 Neb. 721, 400 N.W.2d 869 (1987). The mere possibility of a lawyer's conflict of interest is insufficient to impugn a criminal conviction; to demonstrate a violation of his sixth amendment rights, a defendant must establish an actual conflict of interest adversely affected his lawyer's performance. *State v. Pope*, 211 Neb. 425, 318 N.W.2d 883 (1982); *State v. Bishop*, 207 Neb. 10, 295 N.W.2d 698 (1980).

The defendants do not specify any conflict of interest which existed during the probation revocation proceedings, nor is any conflict apparent in the record. Therefore, the first portion of this assignment of error is without merit.

Further, the defendants argue their counsel was ineffective because he counseled them to plead guilty when they had a valid defense to the charges—the nonpayment was not willful but was the result of inability to pay. To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *State v. Wakeman, ante* p. 66, 434 N.W.2d 549 (1989); *State v. Kitt, ante* p. 52, 434 N.W.2d 543 (1989).

Assuming the counsel's performance was deficient, the defendants were not prejudiced by such action. The defendants were allowed to present evidence at the sentencing hearing, which they did. Considering all the evidence, the trial court found the defendants willfully failed to comply with the probation orders. It is unlikely presenting the evidence at the revocation hearing rather than the sentencing hearing would have affected the judge's findings.

Third, the Engleharts argue revoking probation for not making the monthly payments violated the equal protection clause of the U.S. Constitution because the action discriminated against them on the basis of their ability to pay.

In *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), the U.S. Supreme Court held probation could not be revoked for failing to make ordered restitution if the probationer made reasonable efforts to satisfy the restitution order. The court drew a distinction between a probationer who has made reasonable attempts to pay a fine or

restitution and one who has not.

> If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. . . . But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.

461 U.S. at 668-69.

While poverty does not insulate a defendant from punishment, once probation is imposed, the defendant's ability to pay must be considered before a court can revoke the probation and impose a jail term for violating a probation condition requiring payments.

The sentencing court must find the probationer failed to make sufficient bona fide efforts to make the required payments. If the failure is willful, probation can be revoked and a jail sentence imposed within the sentencing range allowed by law for the original offense. If the court finds the probationer made sufficient efforts to satisfy the probation conditions, the court can order imprisonment only if it finds alternative punishments are not adequate to satisfy the State's interests in punishment and deterrence. *Bearden, supra*. See, also, *State v. Heaton*, 225 Neb. 702, 407 N.W.2d 780 (1987).

In the present case, the district court judge stated the defendants had not made any attempt to make any restitution payments, nor had they made any attempt to sell their motorcycle as ordered. The court found the failure to pay restitution was willful. Therefore, the court did not violate equal protection in revoking probation for failure to comply with court-ordered schedules of payments.

The Engleharts' fourth, and final, assignment of error questions the sufficiency of the evidence to support the finding that the Engleharts violated a condition of their probation. According to the Engleharts, the State did not sufficiently prove the Engleharts were not current on the monthly restitution payments. The portion of each defendant's monthly

payments attributable to restitution amounts to $45.66; the information in the presentence report indicates $450 in bond money was applied toward the monthly payments. Therefore, according to the Engleharts, the court should not have found the Engleharts were delinquent in their restitution payments because the $450 *might* have satisfied their restitution payments.

The argument of the Engleharts is flawed. In calculating the portion of the monthly payments attributable to the restitution, the Engleharts fail to take into account the fact that the amount of restitution was divided equally between the two Engleharts. *Each* defendant was ordered to pay $45.66 per month attributable to restitution, making a total restitution payment of $91.32. However, the record reveals only one payment of $450 between the Engleharts, but does not reveal how the $450 was divided. In this light, it is clear the Engleharts were not current on their restitution payments.

In determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact. A verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Quiring*, 230 Neb. 535, 432 N.W.2d 243 (1988).

The evidence viewed in the light most favorable to the State supports the court's findings that the payments required under the probation orders were willfully not made.

For the foregoing reasons, we find the district court did not err in revoking the defendants' probation.

AFFIRMED.