STATE OF NEBRASKA, APPELLEE, V. LEE W. PATTERSON, APPELLANT.
440 N.W.2d 242

Filed May 26, 1989.   No. 88-577.

Barry Waid, Hall County Public Defender, for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and SPRAGUE and MULLEN, D. JJ.

PER CURIAM.

Following a hearing, the district court overruled defendant-appellant Lee W. Patterson's motion for postconviction relief from the adjudication pursuant to a jury's verdict that he conspired to commit murder. Patterson's six assignments of error present but a single issue, Did the district court err in finding that he was not denied effective assistance of counsel at trial? We affirm.

Patterson was charged with first degree murder, a violation of Neb. Rev. Stat. § 28-303(1) (Reissue 1985), for killing Brian Crittenden on February 1, 1980. Attorneys engaged in the private practice of law in the community were appointed to represent Patterson, and in due course the case proceeded to trial. This trial featured two competing versions of the events of Crittenden's murder, one told by Michael McNitt, the other by Patterson.

According to McNitt, Patterson was a drug dealer, and Crittenden was his supplier. Crittenden would "front" drugs to Patterson, supplying Patterson with drugs and looking for payment later, after Patterson had made his sales. On "the day the incident took place," McNitt, his brother Phillip, Patterson, and Patterson's wife, Debra, were sharing a residence. Crittenden arrived at about 7 a.m., bringing 3 pounds of marijuana for Patterson. At the time, Patterson was asleep in an upstairs portion of the residence. McNitt invited Crittenden into his quarters in the basement, where the two smoked marijuana and snorted cocaine for some time. Crittenden then asked for a place to sleep, and McNitt allowed him to use a space in the basement.

After Crittenden had fallen asleep, McNitt went upstairs and was joined sometime thereafter by Patterson. When McNitt informed Patterson of Crittenden's presence in the basement with 3 pounds of marijuana, Patterson suggested that they "knock off" Crittenden and sell the marijuana to make rent money. Patterson explained that Crittenden had been pressuring him for money owed for past drug deliveries, and

"he really didn't like Brian all that much."

After some discussion, Patterson retrieved a .22-caliber rifle from his bedroom, went into the basement, turned back, talked with McNitt about his intentions again, returned to the basement, and shot Crittenden where he lay sleeping. Patterson then returned upstairs, replaced the rifle in his bedroom, and said to McNitt, "It's done." McNitt then went to the basement and found Crittenden in bed with blood in his mouth or nostrils. Later that day, Patterson emptied Crittenden's pockets and orchestrated disposal of the body, assisted by McNitt and McNitt's brother.

According to Patterson's version of events, McNitt woke him on the morning of Crittenden's death to inform him of Crittenden's arrival. Patterson went to the basement, found Crittenden asleep, and woke him. The two then discussed selling Crittenden's 3 pounds of marijuana and whether this could be accomplished "before 6 or 7 o'clock that night." Later, according to Patterson, McNitt suggested that they shoot Crittenden. Some time later, McNitt took Patterson's rifle and shot Crittenden as he slept. Thereafter, according to Patterson, McNitt took the lead in disposing of Crittenden's body, with Patterson and McNitt's brother assisting.

Debra Patterson gave testimony that tended to corroborate her husband's version of the events. McNitt's brother invoked the protection of the fifth amendment, refusing to testify at trial.

The jury was told that pursuant to a plea bargain, McNitt was charged with conspiracy to commit murder.

Although a verbatim record of the instruction conference is not included in either the bill of exceptions in this case or the bill of exceptions in the underlying trial, *State v. Patterson*, case No. 44003, the transcript in this case reflects that an instruction in the form commonly referred to as a "step instruction" was given verbatim, as requested by Patterson's trial attorneys. This instruction charged the jury to first determine whether Patterson was guilty of first degree murder; if it found he was not, then the jury was to consider the lesser-included offense of second degree murder. If the jury concluded Patterson was not guilty of second degree murder, the jury was next to consider

whether he was guilty of the lesser-included offense of conspiracy to commit murder. If the jury found that he was not guilty of conspiracy to commit murder, the jury was finally to consider whether he was guilty of manslaughter, returning a verdict of guilty to that charge or of not guilty. The jury returned a verdict of guilty of conspiracy to commit murder, whereupon Patterson was so adjudged and thereafter sentenced to imprisonment for a term of 16 years 8 months to 50 years.

Following conviction, Patterson moved for dismissal of his trial attorneys and appointment of substitute counsel to pursue his appeal. This motion was denied, and Patterson was represented on direct appeal by the same attorneys who handled his trial. Patterson's direct appeal challenged only the propriety of his sentence, which this court affirmed under then Neb. Ct. R. of Prac. 20 (rev. 1977), 209 Neb. xx (case No. 44003, Sept. 16, 1981).

Subsequently, Patterson, now represented by the office of the Hall County public defender, filed the subject motion for postconviction relief. By the time of the hearing thereon, one of Patterson's two appointed trial attorneys had died. The remaining trial attorney testified as follows:

> Q. Did you make the decision to include the lesser included offense of conspiracy to commit murder in the jury instruction prior to the trial commencing?
>
> [Attorney]. If you'll bear with me I have to make some qualifications. I, obviously, was not lead counsel in that case so they weren't really my decisions to make; although, I understand my professional responsibilities that I'm as responsible as lead counsel. The decision was probably made by [lead counsel]. I'm not sure when he precisely made that decision. I am confident that it is something that he had contemplated for weeks before trial because of—you know, basically, what I was indicating earlier, the whole purpose of having Mr. Patterson testify was to give some options to the jury. And obviously the way to give the options to the jury is to provide them with the court's instruction for some other lesser offense.

A defendant seeking postconviction relief has the burden of establishing a basis for such relief, which is available only when

a constitutional right has been infringed or violated. The findings of the district court will not be disturbed unless clearly erroneous. *State v. Gagliano,* 231 Neb. 911, 438 N.W.2d 783 (1989); *State v. Ellefson,* 231 Neb. 120, 435 N.W.2d 653 (1989).

It is axiomatic that one defending a criminal charge has the constitutional right to the effective assistance of counsel. *State v. Ellefson, supra; State v. Wakeman,* 231 Neb. 66, 434 N.W.2d 549 (1989). When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions. *State v. Gagliano, supra; State v. Neal,* 231 Neb. 415, 436 N.W.2d 514 (1989). These are questions of law, not of fact. *State v. Gagliano, supra.*

Patterson contends that his trial counsel rendered prejudicially ineffective assistance in securing a jury instruction on conspiracy to commit murder. Although it may be, as Patterson argues, that conspiracy to commit murder is not a lesser-included offense of murder in the first degree and that he thus was not entitled to an instruction on conspiracy to commit murder, it is nevertheless also true that ineffective assistance of counsel is not synonymous with error by counsel. Although Patterson's trial counsel may have been in error in their belief that Patterson was entitled to a conspiracy instruction, we cannot say that under the circumstances of this case the request for such an instruction constituted ineffective assistance.

As Patterson's counsel correctly noted, Patterson faced evidence which, if believed by the jury, would make him guilty of first degree murder and thus make him a candidate for the death penalty. Trial counsel, without benefit of hindsight, reasonably concluded that the best strategy was "to give some options to the jury" by directing its attention from the crime with which Patterson was charged to a crime no more onerous than that with which McNitt was charged. Given the situation Patterson faced, this strategy cannot be said to have constituted

ineffective assistance of counsel.

AFFIRMED.

CAPORALE, J., dissenting.

I must respectfully dissent, for, in arriving at its resolution of Patterson's appeal, the majority indulges an underdeveloped analysis, thereby reaching a legally incorrect conclusion.

It is to be remembered that the information which charged Patterson with one count of first degree murder, in violation of Neb. Rev. Stat. § 28-303(1) (Reissue 1985), was never thereafter amended to reflect additional charges. The majority correctly observes that Patterson was convicted under a so-called step instruction requested by his trial counsel, which instruction included the "option" of a finding of guilty to conspiracy to commit murder. As shall be seen, the true significance of this observation has eluded the majority.

Patterson argues, in sum, that his trial counsel rendered prejudicially ineffective assistance in securing a jury instruction concerning a crime with which he was not charged. This instruction was apparently requested on the misjudgment that conspiracy to commit murder is a lesser-included offense of murder in the first degree and therefore need not have been separately charged. See, *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988); *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988); *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986).

A lesser-included offense is one which is necessarily established by proof of the greater offense. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989); *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989); *State v. Baker*, 231 Neb. 144, 435 N.W.2d 202 (1989). To be a lesser-included offense, the elements of the crime must be such that in committing the greater offense, one at the same time necessarily commits the lesser offense. *State v. Olsan, supra; State v. Baker, supra.*

The determination of whether an offense is a lesser-included one is controlled by the elements of the crimes as set forth in the statutes and not by the facts presented in the particular case at issue. *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989). The fact that the elements of the lesser-included offense may be present in a case of the greater offense is not sufficient

to invoke the lesser-included offense instruction if it is possible to commit the greater offense without committing the lesser offense. *State v. Donhauser, supra.*

Section 28-303 establishes the elements of the crime of murder in the first degree as follows:

> A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done; or if by willful and corrupt perjury or subornation of the same he purposely procures the conviction and execution of any innocent person.

Neb. Rev. Stat. § 28-202 (Reissue 1985) enumerates the elements of conspiracy thusly:

> (1) A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:
>
> (a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and
>
> (b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

It is abundantly clear, therefore, that one may kill another with the mental state, attendant circumstances, or in the manner proscribed by § 28-303 without conspiring with another to do so. Similarly, one may conspire with another to commit a killing which, if consummated, might itself rise to the level of first degree murder; even in the absence of the consummation of such a killing, however, such an agreement plus an overt act in furtherance of the killing would be sufficient to make out the crime of conspiracy described in § 28-202. Obviously, then, conspiracy to commit murder is not a lesser-included offense subsumed within the statutory definition of murder in the first degree, nor is murder in the first degree a lesser-included offense subsumed within the

statutory definition of conspiracy to commit murder. Thus, there can be no question but that the questioned portion of the instruction at issue is without legal basis.

It is equally clear that the foregoing is not an esoteric analysis. The rules regarding lesser-included offenses in Nebraska were in existence at the time of Patterson's trial and remain substantially unchanged today. See, e.g., *State v. Tamburano*, 201 Neb. 703, 705, 271 N.W.2d 472, 474 (1978) ("A lesser offense is one which must be committed if the greater offense is committed or, put slightly different[ly], is one which is fully embraced in the higher offense"); *State v. Comer*, 199 Neb. 762, 763, 261 N.W.2d 374, 375 (1978) ("A lesser-included offense is one which includes some of the elements of the crime charged without the addition of any element irrelevant to the crime charged").

A lawyer with ordinary training and skill in the criminal law in Nebraska would understand that conspiracy to commit murder is not a lesser offense included within a charge of murder in the first degree. Patterson has thus satisfied the first element of the test for demonstrating the ineffective assistance of trial counsel. See, *State v. Gagliano,* 231 Neb. 911, 438 N.W.2d 783 (1989); *State v. Neal,* 231 Neb. 415, 436 N.W.2d 514 (1989).

To prevail, however, Patterson must also show a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome of the trial below, that he was prejudiced by his trial attorneys' erroneous request. *State v. Gagliano, supra*; *State v. Englehart*, 231 Neb. 579, 437 N.W.2d 468 (1989); *State v. Neal, supra*; *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989).

The majority's assumption that Patterson was not prejudiced by the erroneous portion of the questioned instruction proceeds from the notion that but for the opportunity to find Patterson guilty of conspiracy to commit murder, the jury would have found him guilty of the more onerous crime of murder in one degree or another.

This divination overlooks that the instruction at issue directed the jury to determine whether Patterson conspired to commit murder if, and only if, it first concluded that he was not

guilty of murder in either the first or second degree. The only relevant assumption the law permits is that the jury followed the court's instruction. *State v. Murphrey*, 220 Neb. 699, 371 N.W.2d 702 (1985); *State v. Sayers*, 211 Neb. 555, 319 N.W.2d 438 (1982). Thus, the verdict means that the jury accepted Patterson's version of the killing rather than McNitt's rendition of the events. It is tautological to observe that Patterson would not have been convicted of conspiracy had the jury not been erroneously instructed as it was at the ill-informed and unskilled request of his trial attorneys. All confidence in the outcome of Patterson's trial is undermined by this simple observation.

The State suggests, however, that in any event Patterson's withdrawal of his motion for new trial, in which motion the State had joined and which was in part based on "error of law occurring at trial," waived any ineffectiveness his trial attorneys may have demonstrated by requesting the subject instruction. The postconviction evidence establishes that Patterson withdrew his motion upon being advised by his trial attorneys that should he succeed in obtaining a new trial, he would again "face the charge of first degree murder."

Both the Nebraska and U.S. Constitutions provide that no person shall be twice put in jeopardy for the same offense. U.S. Const. amend. V; Neb. Const. art. I, § 12; *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987). In *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), petitioner had been charged with first degree murder, had been convicted by a jury of second degree murder as a lesser-included offense, and had successfully appealed that conviction. He was then again placed on trial for first degree murder and this time convicted of that crime. Deciding Green's appeal from the second conviction, a majority of the U.S. Supreme Court held that "this second trial for first degree murder placed Green in jeopardy twice for the same offense in violation of the Constitution." 355 U.S. at 190. The *Green* majority intimated that this result rested on the observations that "the jury's verdict [was] an implicit acquittal on the charge of first degree murder" and that the jury

was given a full opportunity to return a verdict and no

extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.

355 U.S. at 190-91.

Some years later, in *Price v. Georgia*, 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970),

Petitioner was charged with the killing of Johnnie Mae Dupree in an indictment for the offense of murder filed in the Superior Court of Effingham County, Georgia. He entered a plea of not guilty and was tried on October 17, 1962. The jury returned a verdict of guilty to the lesser included crime of voluntary manslaughter and fixed the sentence at 10 to 15 years in the state penitentiary. The jury's verdict made no reference to the charge of murder.

The Court of Appeals of Georgia reversed the conviction because of an erroneous jury instruction and ordered a new trial.

398 U.S. at 324. In a unanimous decision the U.S. Supreme Court reasoned:

"The Constitution of the United States, in the Fifth Amendment, declares, 'nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb.' The prohibition is not against being twice punished, but against being twice *put* in jeopardy . . . ." (Emphasis added.) The "twice put in jeopardy" language of the Constitution thus relates to a potential, *i. e.*, the risk that an accused for a second time will be convicted of the "same offense" for which he was initially tried.

398 U.S. at 326 (quoting *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896)). Citing *Kepner v. United States*, 195 U.S. 100, 24 S. Ct. 797, 49 L. Ed. 114 (1904), and *Green v. United States, supra*, the *Price* Court held that "[t]he rationale of the *Green* holding applies here," 398 U.S. at 329, and reversed Price's conviction obtained at his second trial. Of particular interest to the case before us is the *Price* Court's observation that the result in *Green, supra*,

rested on two premises. First, the Court considered the

first jury's verdict of guilty on the second-degree murder charge to be an "implicit acquittal" on the charge of first-degree murder. Second, and more broadly, the Court reasoned that petitioner's jeopardy on the greater charge had ended when the first jury "was given a full opportunity to return a verdict" on that charge and instead reached a verdict on the lesser charge.

398 U.S. at 328-29.

As noted earlier, the jury in this case was explicitly instructed to consider Patterson's culpability on the charges of first and second degree murder before considering the erroneously included conspiracy offense. The jury's verdict thus embodied its certain conclusion that Patterson was not guilty of the former two crimes. Jeopardy having attached and having been resolved in his favor on those crimes, Patterson could not again have been tried for first or second degree murder in the death of Brian Crittenden.

Consequently, the advice relative to Patterson's motion for new trial constitutes not a basis for ruling that he waived his trial attorneys' ineffectiveness in seeking an erroneous instruction, as contended by the State, but, rather, constitutes a separate ground for finding those attorneys ineffective.

The State also urges the view that a criminal defendant may not complain of error he himself or she herself invited. This maxim is indeed meritorious in many contexts. See, e.g., *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986), *overruled on other grounds, State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987); *State v. Blue*, 223 Neb. 379, 391 N.W.2d 102 (1986); *State v. American Theater Corp.*, 194 Neb. 84, 230 N.W.2d 209 (1975). However, it is not applicable in all contexts. See, e.g., *State v. Williams*, 212 Neb. 860, 326 N.W.2d 678 (1982); *State v. Svoboda*, 205 Neb. 175, 287 N.W.2d 41 (1980). It cannot be applicable where a convicted defendant appeals or requests postconviction relief based upon ineffective assistance of counsel. Patterson, it must be remembered, here assigns no error directly to the district court's instruction to the jury but, rather, challenges his attorneys' action in requesting such an instruction. In such a situation, the presumption that the interests of attorney and client are one and the same can no

longer be uncritically indulged, and courts are obliged to inquire whether the attorney was derelict in the duty to zealously defend the client within the bounds of the law, or to advise the client such that any resulting error "invited" by the client clearly resulted from the client's free exercise of independent and fully informed choice. See, generally, *People v. Berryman,* 171 Ill. App. 3d 548, 559, 526 N.E.2d 180, 187 (1988) ("Because defendant has not alleged that his trial counsel was ineffective for submitting this instruction, we believe that he is estopped from having us consider the issue"); *State v. Thomas,* 53 Or. App. 375, 631 P.2d 1387, 1391 (1981) ("It may be that counsel discussed the entire situation with defendant . . . and that defendant participated in the tactical decision . . . . The decision may have been a calculated risk . . . in which defendant participated. *If that is the case, he cannot now complain*"). (Emphasis supplied.) But see, *State v. Taylor,* 30 Ohio App. 2d 252, 285 N.E.2d 89 (1972).

On the facts of this case as adduced at the postconviction motion hearing, it is apparent that any error by Patterson's trial attorneys in requesting an instruction on a crime with which Patterson was not charged may not properly be imputed to Patterson himself, for he was either mere spectator and not participant in the strategic decision at issue, or relied on the advice of his attorneys.

For the foregoing reasons, I am compelled to conclude that the judgment of the district court is incorrect and should be reversed. I would so hold.